## Enos Stone v. Amanda D. Brown.

Where objections are filed, to the grant of letters of administration, which are sustained, and there is an appeal to the District Court, where they are also sustained; on appeal to this Court, it would seem that objections, not filed in the Probate or District Court, will not be considered, although the grounds therefor may seem to appear from the statement of facts.

The Statute (Hart. Dig. Art. 1121) which provides that in case of neglect of an executor named in a will, to present the will for probate within thirty days after the death of the testator, the administrator shall be appointed, &c., does not preclude the executor, in a controversy as to the right to administer, from showing a reasonable excuse for not presenting the will for probate, within the thirty days.

The neglect which, under the Statute, (Hart. Dig. Art. 1121,) forfeits the right of an executor named in a will, to demand letters testamentary, must be wilful, and not merely a failure caused by ignorance of the law.

Where a testator willed that a certain person should take charge of his children, as guardian for them, sell the perishable property, rent out the house, hire out the negroes, &c., it was held that the person so named was virtually nominated executor, and entitled to letters testamentary in preference to the next of kin.

Where a testator willed that a certain person should take charge of his children, as guardian for them, sell the perishable property, rent out the house, hire out the negroes, &c., and the person so named, in ignorance of the law, failed to present the will for probate within thirty days, as required by the Statute, and, in the meantime, caused the perishable property to be sold, and took charge of the children and negroes ; it was held, that he did not thereby forfeit his right to letters testamentary.

Appeal from Galveston.   Tried before the Hon. Nelson H. Munger.

Stone, by advice of counsel, (not the gentlemen who represented him in this Court) had sold the perishable property at auction, and taken charge of the children of the deceased, and the negroes.   The other facts are stated in the Opinion.

*Allen & Hale* and *R. H. Howard,* for appellant.

*R. & A. M. Hughes,* for appellee.

LIPSCOMB, J. The record discloses the following facts : J. H. Spillman departed this life on or about the 14th day of December, A. D. 1854, leaving a will in writing subscribed by him, as follows :

"I want my children brought to Galveston ; Dr. Stone to "take charge of them as guardian for them ; sell the perishable "property ; rent out the house ; hire out the negroes, &c.; my "son Charles I want Mrs. Stone to take charge of, and keep "him with her until he is old enough to put to school, as a "child of her own."

    (Signed,)      " J. H. SPILLMAN."

Attest, JOHN BURDGESS,
   J. H. SYLVESTER,
   SARAH A. STONE.

Enos Stone filed his petition to have the will admitted to probate, and that letters of administration, with the will annexed, should be granted to him at the next Term of the said Court, after due notice of his application. It does not appear from the record, when the application was filed ; but it appears from a marginal note to the notice, that the notice was posted on the 15th February, 1855. The notice required all persons interested to appear and make their objections, on or before the February Term of the County Court, to be holden in February, on the last Monday thereof, which notice was signed by the Clerk of the County Court officially, the 15th February, 1855. At the said February Term, opposition was made to Stone's petition as follows : " County Court, February "Term, 1855, in the matter of the application to probate the "paper purporting to be the last will and testament of J. H. "Spillman, deceased, Hiram W. Brown, and Amanda D. Brown, "administrators, &c., oppose said

 " 1st. Because the same is not a testamentary paper.
 " 2nd. It was not executed as required by law.
 " 3rd. And there are other objections.

 (Signed)    " R. HUGHES, for the objectors."

And the said Hiram W. Brown and Amanda D. Brown ob-ject to the grant of administration to the applicant, Enos Stone,

1st.   Because there is now an administrator, appointed at the last Term, which is yet subsisting.

2nd.   Said applicant is totally disqualified by his intermed-dling with the estate, to be administrator.

And they object to said Stone being appointed guardian, because he has disqualified himself as such guardian, by acts of intermeddling with the estate,

(Signed)                              R. HUGHES.

The County Court admitted the paper, offered as the will, to be probated, but refused to appoint the petitioner adminis-trator with the will annexed, and appointed Amanda D. Brown administratrix with the will annexed, as the next of kin to the deceased ; from which decision Stone appealed to the District Court ; which Court affirmed the judgment of the County Court ; and Stone appealed to this Court.

In this Court, the ground pressed most strongly, and the only one material, in support of the judgment of the Court be-low, is, that petitioner did not apply for the probate of the will within the time prescribed by the Statute.   This was not made a ground of opposition in the Court below ; and, as the Statute admits of exceptions as to the limitation of the time within which the will must be presented for probate, the peti-tioner might have brought himself within one of the exceptions, had this objection been made.   He was not required to an-swer any objection not made.   The other grounds not being material, the judgment of the Court below would have to be reversed.

If, however, we were to stop here, it would be, perhaps, ne-cessary to remand for a new trial ; and as the case is believed to be fully before us, for the adjudication of the rights of the appellant, we will proceed to examine the objection here raised.   The objection is founded upon the first part of the 9th Section of the Act of March 20th, 1848, (Hart. Dig. Art.

1118,) and is as follows, i. e.: " That when any person shall " die intestate, or when no executor is named in a will, or " when the executor or executors, named in a will, are disquali- " fied, or shall renounce the executorship, or shall neglect to " accept and qualify within twenty days after the probate of " the will, or shall neglect, for a period of thirty days after the " death of the testator, to present the will for probate, then " administration with the will annexed, of the estate of such " testator, shall be granted," &c.   In Section 12 of the same Act, (Hart. Dig., Art. 1121,) there is an exception in cases where the executor was absent from the State, or sick, giving sixty days after the return to the State of such executor, or af- ter his recovery from sickness, upon making proof of such ab- sence or sickness.   And, in Art. 1124, Hart. Dig. 15th Section, same Act, there is a provision that where letters of adminis- tration have been granted upon the estate of a deceased per- son, and it shall afterwards be discovered that the deceased left a lawful will, such will shall be proved in the manner pro- vided in this Act ; and if an executor is named, he shall be allowed to accept and qualify in the manner herein provided ; but if no such executor shall be named, or if the executor named be disqualified, or shall renounce the executorship, or shall neglect to accept and qualify within twenty days after the probate of the will, or shall neglect, for a period of thirty days after the discovery of such will, to present it for probate, then administration shall be granted according to the provis- ions of this Act, &c.

It is contended by the appellees, that, as more than thirty days had elapsed after the death of the testator, the executor, absolutely and without any excuse, excepting absence from the State or sickness, forfeited the executorship ; that the term " neglect for the period of thirty days," used in the Statute, works this absolute forfeiture.   We believe, however, that the term, when used as a basis of a penalty or a forfeiture, must be the neglect of a known duty.   A failure to do or not to do an

act, to make it an act of negligence, the person so doing, or not doing, must know that it is his duty to do it, and with that knowledge he fails to do it.   There are some things that it is so clearly our duty to do, that there can be no doubt about it ; and a failure in such cases, if in our power, would be negligence.  A more stringent and literal construction of the word neglect, would, in some instances, defeat the manifest intention and spirit of the law.   If nothing but absence from the State, or sickness, would prevent a forfeiture of the right of the executor named in the will, and a defeat of the intention of the testator, the person named in the will, without being either sick or out of the State, might be so far from the domicil of the testator, that he could not possibly present the will for probate within the period of thirty days, although he knew of the existence of the will.   His failure to present it in such case, within the time limited by the Statute, would not be a wilful or intentional neglect ; yet this case would not be within the exception of the Statute.   Other cases might be put to show the unreasonableness of an adherence to the construction contended for by the counsel for the appellees.   The word neglect, must be construed with reference to the *quo animo* attending the omission to do the thing required.   Every omission to do an act that ought to be done, will not amount to a neglect to do it, within the spirit of the law.

The conclusion we arrive at is, that a fair construction of the Statute will not preclude a reasonable excuse for not presenting the *will* for probate within the thirty days.   We will now proceed to enquire if the facts, in this case, are such as to repel the presumption of a wilful neglect, on the part of the appellant, and furnish a reasonable excuse for his not presenting the will for probate within thirty days from the death of the testator.   There was great doubt and uncertainty, even with the well informed, whether the paper signed by the testator, constituted the lawful will of the deceased ; and it is admitted that, by the ancient law, it would not have been re-

garded as a lawful will, for the want of the appointment of an executor, it being then held, in analogy to the civil law requiring the institution of an heir who was regarded really as a trustee, that if there was no executor named, there could be no will. Long since, however, this rule was modified, and it was acknowledged that there could be a testamentary disposition made by the deceased, of his estate, without the appointment of an executor ; and, further, that an executor might be made or appointed in a will, without expressly naming him as such ; that where a person was charged with the disposition of the estate, and authorized and directed to carry out the intention of the testator, though not named as executor in the will, it made him the executor as fully as if named as such. This is conceded to be the law, and it is admitted that the paper offered for probate was the lawful will of the deceased, constituting the appellant his executor ; but there was so much doubt as to its validity, that the first opposition made to its probate in the County Court was, that it was not a testamentary paper. And there was, further, a doubt whether, admitting it to be a lawful will, it constituted an executor, or would require the appointment of an administrator with the will annexed, to carry it out, according to the wishes of the testator. These doubts and uncertainty, as to the legal character of the will, would present a case not unlike, in principle, to an unknown will discovered, which gives to the executor the same time, after it is discovered, to present it for probate. Since the decision of the case of Hunt v. Rousmaniere, in the Supreme Court of the United States, (8 Wheaton, 174,) the rule that ignorance of the law excuses no one, has been much modified both in England and the United States. (See Stone v. Godfrey, 27 English Law and Equity Rep. 324 ; and Cannon v. Hemphill, 7 Tex. R. 198 and 199, and authorities cited ; 4 Munford, 68.)

Considering the uncertainty that existed whether there was a lawful will or not, and the fact that no great delay occurred, we believe that there was no intention exhibited by the peti-

tioner to neglect presenting the will in time for probate. When it is remembered that the most unlimited confidence was placed in the petitioner by the deceased, and that he had delivered the keys of his desk to him, and requested him to take immediate possession of his house and effects, at his death, we cannot regard the acts done by the petitioner, before the probate of the will, as amounting to such an intermeddling with the estate as to disqualify him from receiving letters testamentary.

We believe that the appeal, in this case, brings before us for revision the whole action of the Probate Court in relation to the will of the deceased, and the refusal to grant letters testamentary to the petitioner, and the grant of administration to the objectors, Amanda D. Brown and her husband. We think that the Probate Court erred in not granting letters testamentary to the petitioner, and in granting the administration to the Browns, and also in not revoking the administration previously granted. The District Court also erred in affirming the judgment of the Probate Court. The judgment of the District Court and also of the Probate Court is reversed, and the cause is remanded to the District Court, with instructions to enter its judgment according to the opinion of this Court, and to certify the same to the Probate Court, for the observance of that Court.

Reversed and reformed.